## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

TERSLY INVESTMENTS LIMITED,

    Plaintiff,

v.

GREAT HILL PARTNERS AND DECHERT LLP,

    Defendants.

**Civ. No. 1:20-cv-10234**

## COMPLAINT

Plaintiff Tersly Investments Limited ("**Plaintiff**") alleges as follows against defendants Great Hill Partners ("**Great Hill**") and Dechert LLP ("**Dechert**") (collectively, "**Defendants**" or "**Co-conspirators**").  As detailed more fully below, Plaintiff, incorporated in England, has been assigned all rights to bring claims in the instant action by the party to the contract at issue, Tersly Investments Limited registered in the British Virgin Islands ("**Tersly**").

## PRELIMINARY STATEMENT

1.  This case arises from a years-long sustained and successful effort by a former co-shareholder, a subsequent private equity investor, and a global law firm to deprive Tersly of the benefits of its early-stage investment in a company ("**Company**," as defined, *infra*, paragraph 12.a.), a pioneer in the online travel search industry.

2.  Two years after making its investment, Tersly sold its interest in the Company to another shareholder, Highlander Worldwide Limited ("**Highlander**").  In return, Tersly received both cash considerations and, of far greater importance to the claims at issue in the instant matter, the right to future compensation if the Company were sold within twenty-one years.

3.     After completion of the deal, Highlander, with the assistance of Dechert, took active steps to deprive Tersly of its future economic interest in the Company.

4.     First, Highlander, with the assistance of Dechert, sold a portion of the Company in 2014 without properly informing or paying Tersly under the contract.

5.     Then, despite having been engaged in negotiations for approximately two years regarding Tersly's claims on the 2014 sale, Highlander and Dechert, with the knowledge and assistance of Great Hill, failed to disclose a pending sale of the Company to a third party, Booking Holdings Inc., (then known as The Priceline Group, Inc.) ("**BHI**").

6.     Defendants took actions to interfere with Tersly's claim that Highlander breached its agreement once Tersly issued notice that it was preparing to initiate litigation as Tersly's notice interfered with Defendants' plan to sell the Company.

7.     Defendants executed their scheme by, among other actions, failing to disclose BHI's interest in the Company to Tersly during settlement negotiations on Tersly's litigation claim and in manipulating the completion of due diligence with BHI so as to avoid required disclosure.

8.     As a result of Defendants' actions, Tersly was induced to accept a grossly undervalued settlement arising out of the 2014 sale.

9.     The subsequent public announcement of the agreement to sell the Company to BHI for $550 million occurred a mere **nine hours and seventeen minutes** after reaching settlement with Tersly relating to Tersly's claim on the 2014 transaction.

10.    The Defendants' actions, taken to successfully induce Tersly to accept the undervalued settlement rather than the approximately $24 million it would have been owed after the sale to BHI, reduced Tersly's contractual and economic rights in the Company by approximately $18 million, or roughly 75%.

## PARTIES

11.     Tersly Investments Limited, Plaintiff in the instant action, is registered in England as Company No. 10792541.  Under an assignment dated May 30, 2017, *see* 30 May 2017 Deed of Assignment, attached hereto as Exhibit 1, and a supplementary assignment dated January 17, 2020, Plaintiff has been assigned all rights by Tersly, the party to the contract at issue as described more fully, *infra*, in paragraph 16.b., to bring claims.  *See* 17 January 2020 Supplementary Deed of Assignment, attached hereto as Exhibit 2.  Tersly considered and approved the assignment of rights to Plaintiff*, see* 30 May 2017 Tersly Investments Limited Board Minutes, attached hereto as Exhibit 3, and the supplementary assignment of rights.  *See* 24 December 2019 Tersly Investments Limited Board Minutes, attached hereto as Exhibit 4.  Plaintiff considered and accepted the assignment from Tersly, *see* 26 May 2017 Tersly Investments Limited Board Minutes, attached hereto as Exhibit 5, and the supplementary assignment of rights.  *See* 17 January 2020 Tersly Investments Limited Board Minutes, attached hereto as Exhibit 6.

12.     Great Hill Partners ("**Great Hill**"), a defendant in the instant action, is a Delaware corporation, with its headquarters located at One Liberty Square, Boston, Massachusetts 02109. Great Hill is a financially sophisticated private equity fund with approximately $2.7 billion under management that acquires, recapitalizes, and provides growth equity capital to middle-market companies.

13.     Dechert LLP ("**Dechert**"), a defendant in the instant action, is a global law firm of more than 800 lawyers.  Dechert has 21 offices throughout the United States, Asia, and Europe, including an office in Boston, Massachusetts, that it has maintained since 1987.  The Boston office is located at One International Place, 40th Floor, 100 Oliver Street, Boston, Massachusetts 02110-2605.  Dechert was founded in Philadelphia, Pennsylvania and is a registered limited liability partnership under Pennsylvania law.  There are approximately 140 lawyers in Dechert's London

office and 50 in the Boston office, and both offices have a financially sophisticated substantial corporate mergers and acquisition practice.  Importantly, Dechert describes itself as organized by practice area, not geography, with seamless integration between offices.

## JURISDICTION AND VENUE

14.     This Court has subject matter jurisdiction over the instant matter pursuant to 28 U.S.C. § 1332(a)(2) as the matter in controversy exceeds the sum or value of $75,000 and is between citizens of different states and a citizen of a foreign state.

15.     Venue is proper under 28 U.S.C. § 1391 as a substantial part of the events or omissions giving rise to the claim occurred in this district and both defendants reside in this district.

## RELEVANT ENTITIES

16.     For reference, the following entities are relevant to claims against Great Hill and Dechert:

   a.   Cheapflights.com ("**the Company**"), the company at the center of this dispute, was originally incorporated as Sharpical Limited in England and Wales on January 26, 2000, with company no. 3914064, to acquire the pre-existing Cheapflights online flight search and comparison company.  The Company finalized its acquisition of 89% of the pre-existing Cheapflights company on March 20, 2000.  Then, on June 13, 2001, Sharpical changed its name to Cheapflights.com.  Finally, after an acquisition of another flight search and comparison company, the Company changed its name to Momondo Group Limited on October 29, 2012.  It, at all material times, carried on business as a flight search and comparison website and continues to maintain the Cheapflights brand.

   b.   Tersly Investments Limited, Tersly in the instant action, is registered in the British Virgin Islands as Company No. 347866 and has its registered office at PO Box 3175,

Wickhams Cay 1, Road Town, Tortola, British Virgin Islands.  Tersly was one of the two founding members of the Company.  Tersly entered into an agreement with Highlander Worldwide Limited on January 22, 2002, to sell all of its shares in the Company in exchange for £1,250,000 in cash and an obligation that Highlander pay Tersly according to a contractual formula if it sold any portion of the shares within 21 years, up to and including January 22, 2023.  As noted above, Tersly assigned all of its rights to bring claims arising out of its rights in the Company to Plaintiff under an assignment dated May 30, 2017, *see* Exhibit 1, and a supplementary assignment dated January 17, 2020.  *See* Exhibit 2.

c.  Holding-Parsons Solicitors ("**HPS**") represented Tersly as attorneys from at least January 2002, including during negotiations for the sale of Tersly's shares in the Company to Highlander in January 2002, during negotiations for damages arising out of the Company's fraudulent partial sale to Great Hill in 2014, and at least through execution of the settlement agreement with Highlander on February 6, 2017.

d.  Highlander Worldwide Limited ("**Highlander**")[1] is a company incorporated in the British Virgin Islands under no. 347866 with registered office at PO Box 3175, Wickhams Cay 1, Road Town, Tortola, British Virgin Islands.  Highlander has an Administration Office at 5th Floor, 37 Esplanade, St Helier, Jersey, JE1 2TR, but upon information and belief is effectively managed and controlled by two members of the Burge family from England, the father Oliver Burge and the son Hugo Burge.

---

[1] Plaintiff does not bring suit against Highlander in the instant action as information currently in its possession and control suggests that Highlander is not subject to the jurisdiction of United States courts.  However, if Plaintiff learns of information during discovery or its ongoing investigation of Highlander that would allow jurisdiction, Plaintiff will move to amend the complaint at that time to include Highlander and its principals.

Highlander became a shareholder in the Company in 2000 and continued to own shares until on or about July 24, 2017 when Kayak, a subsidiary of Booking Holdings, Inc. (then The Priceline Group, Inc.), purchased all of the shares of the Company.

e. **Oliver Burge** effectively controlled Highlander through trustees and, additionally, was an early investor in the Company in his personal capacity.  He acted as agent for Highlander during the relevant period.  During the relevant period, Oliver Burge's primarily residence was in London, England at 3 Bolney Gate, London SW7 1QW.

f. **Hugo Burge**, the son of Oliver Burge, is the former Chief Executive Officer of the Company, the former Chief Executive Officer of Momondo Group Holdings Limited, and the former Executive Chairman and Chief Executive Officer of Cheapflights Media (USA) Incorporated.  As noted, infra in paragraph 16.h., Cheapflights Media (USA) Incorporated was headquartered in Boston, Massachusetts during the relevant period. Hugo Burge was an individual shareholder in the Company and additionally is a beneficiary of the discretionary trust that owns Highlander.  Hugo Burge primarily resides in London, England.

g. Momondo Group Holdings Limited ("**MGHL**") was incorporated in England as Company Number 09258528 with a registered address of 100 New Bridge Street, London EC4V 6JA.  Formed as a holding company on October 10, 2014, its sole shareholder was Hugo Burge.  As a result of an October 17, 2014 shareholder agreement, just prior to the sale of a controlling portion of the Company to Great Hill, the Company became a wholly owned subsidiary of MGHL and MGHL was restructured with the exact shareholder structure as the Company.  Then, on the same date, Great Hill purchased all of MGHL's preferred shares in the Company.

h. Cheapflights Media (USA) Incorporated ("**Cheapflights Media (USA)**") is a Delaware corporation with its current corporate headquarters located at 10 Canal Park, Cambridge, Massachusetts 02141.  Founded in Boston, Massachusetts in 2003 as Cheapflights (USA) Incorporated, it changed its name to Cheapflights Media (USA) in 2010.  During the relevant period, including from December 2016 through February 2017, Cheapflights Media (USA) maintained its offices at 10 Post Office Square, Boston, Massachusetts 02109, only moving its headquarters out of Boston once BHI completed its acquisition of MGHL on July 24, 2017.  Cheapflights Media (USA)'s former CEO and Executive Chairman was Hugo Burge.

i. Booking Holdings Inc. ("**BHI**"), formerly The Priceline Group, Inc., was founded in 1997.  It changed its name from the Priceline Group to Booking Holdings on February 21, 2018.  Currently, it is a company organized in Delaware with its headquarters located at 800 Connecticut Avenue, Norwalk, Connecticut 06854.  BHI owns and operates several travel fare aggregators and metasearch engines, including, after its July 24, 2017 completion of the $550 million acquisition of the Company, the Cheapflights and Momondo webpages.  At the time of the acquisition, BHI's (then Priceline's) market capitalization was in excess of $70 billion.

## FACTS

**Tersly and One Other Member Found the Company**

17. On January 26, 2000, Tersly, along with one other founding member, formed the Company in order to serve as an investment vehicle for the acquisition of 89% of the original Cheapflights business.

18.     Once the Company completed the acquisition on March 20, 2000, the Company and its successors at all material times continued to carry on business as a flight search and flight comparison website.

**Highlander Approaches Tersly and Offers to Purchase Tersly's Entire Interest in the Company**

19.     In late 2001, as agent for Highlander, Oliver Burge approached Tersly about purchasing its outstanding shares in the Company.

20.     At this time, Tersly held 1,750,000, or 17.5%, of the Company's shares.

21.     Highlander offered £1,750,000 to acquire all of Tersly's shares, basing the £1 per share value in its proposal to Tersly on its recently completed acquisition of all of the shares of the other founding member of the Company.

22.     Tersly declined Highlander's original offer and counteroffered, proposing that it instead sell Highlander 1,250,000 shares in the Company while retaining 500,000 shares.  Tersly wished to retain shares in the Company because it believed the Company had a potential to increase in value and thus wished to retain an interest in the upside if the Company were acquired in whole or in part.

23.     Highlander, who did not want Tersly to retain shares in the Company, proposed that Tersly sell all its shares in the Company partly in exchange for cash and partly in exchange for an obligation that Highlander pay Tersly a percentage of the consideration it received following a future sale of any portion of Highlander's shares in the Company.

**Tersly Agrees to Sell its Shares in The Company to Highlander by Means of a Non-Discretionary Agreement Based on Good Faith and Fair Dealing**

24.     As the culmination of these negotiations between Tersly and Highlander, Tersly entered into a non-discretionary relational contract with Highlander on January 22, 2002.  *See* Agreement

for the sale and purchase of shares in Cheapflights.com Limited, attached hereto as Exhibit 7 ("**2002 SPA**").

25.     Under the 2002 SPA, Tersly sold 100% of its shares in the Company to Highlander in exchange for: (1) cash totaling £1,250,000, and (2) a non-discretionary obligation, termed "**Deferred Consideration**," that required Highlander to pay Tersly a specific portion of the consideration it received on any future sale of the shares it held in the Company as of the date of the agreement.  *See Id.*  This specific contractual formula compelled Highlander to pay Tersly approximately 14% of that future consideration but limited the obligation to a period of 21 years from the date of execution of the 2002 SPA.  *See Id.*

26.     The 2002 SPA paid Tersly £500,000 **less** than under Highlander's original proposal. Deferred Consideration was designed to account for this difference.  *See Id.* at § 4.

**Highlander and Tersly Specifically Negotiated Provisions Regarding Which Share Transactions Could Lead to Payment of Deferred Consideration**

27.     As Highlander did not want certain share transactions between it and related parties to trigger its obligation to pay Deferred Consideration, Tersly negotiated a provision that required that it be notified of any such transaction and mandated that Highlander obtain Tersly's written consent prior to execution of any such transaction.  *See Id.* at §§ 1.1, 5.1.

28.     The 2002 SPA addresses this concern in § 5.1, which states: "[s]ave with the prior written consent of [Tersly], such consent not to be unreasonably withheld, the Buyer [Highlander] will not transfer shares to; . . . the Buyer's Group; or . . . Mr Oliver Burge or an Associate of Mr Oliver Burge."  *See Id.* at § 5.1.

**The 2002 SPA Protected Tersly's Non-Discretionary Rights**

29.     In sum, in order to protect Tersly's rights and expectations under the 2002 SPA, the non-discretionary terms of the 2002 SPA obligated Highlander to:

a. Upon a Disposal, defined in the agreement as a liquidity event within 21 years, pay Deferred Consideration to Tersly, *see id*. at § 4;

b. Provide Tersly with prior notice and the right to withhold consent if shares were to be transferred to the contractually-defined Buyer's Group, to Oliver Burge, or to an Associate of Oliver Burge, *see id*. at §§ 1.1, 5.1;

c. Provide Tersly with information within 10 business days if there was any change to the legal title or beneficial ownership of any of the shares Highlander owned upon consummation of the 2002 SPA or if there were a reclassification, capitalization, consolidation, or subdivision of the share capital of the Company, *see id*. at § 1.1 & 6.1.; and

d. Preserve Tersly's rights to its undiluted economic interest in the Shares if there were any Reconstruction.  *See Id*. at § 1.1.

30.     After execution of the 2002 SPA, Highlander held 3,520,000 ordinary shares, accounting for 31.33% of the total share capital of the Company.

31.     In accordance with its obligations under the 2002 SPA, Tersly faithfully executed its responsibilities and transferred its shares to Highlander.

32.     Tersly expected that Highlander would act in good faith at all times and would honor the terms of the 2002 SPA.

33.     Highlander had a continuing duty to comply with the provisions of the 2002 SPA in good faith.

**Highlander Never Notifies Tersly Regarding Any Change to its Rights Under the 2002 SPA from 2002 to 2014**

34.     Highlander never contacted Tersly between the execution of the 2002 SPA and the end of 2014 regarding any change to Tersly's rights in the Company under the 2002 SPA.

35.     Upon information and belief, through several transactions between 2002 and 2014, Highlander increased its share ownership in the Company from 3,520,000 shares to 8,028,596 Class A Ordinary Shares.

36.     The Cheapflights website continued to operate in the United States, and Cheapflights Media (USA) maintained its headquarters in Boston.

**Highlander and Dechert, Among Others, Structure Several 2014 Transactions in an Attempt to Deprive Tersly of its Right to Deferred Consideration**

37.     In or about October 2014, the Company engaged in negotiations to sell a majority stake of the Company to Great Hill.  Highlander, as the single largest shareholder in the Company, Hugo Burge, as the Company's CEO, and Dechert, legal counsel to the Company and its shareholders, controlled negotiations for the Company.

38.     As a result of these negotiations, on October 17, 2014, Great Hill purchased all of the Preferred Shares of the Company for £80,000,000, which at that date's exchange rate totaled approximately $128,000,000.  Great Hill's purchase valued the Company at roughly £132,000,000, then $211,200,000.

39.     During negotiations and after consummation of the sale to Great Hill, Highlander, with the assistance of Dechert, undertook a series of corporate actions to facilitate its misappropriation of Tersly's retained economic interest, as set forth in the 2002 SPA through the Deferred Consideration terms, and to evade its notice obligations.

**In the First 2014 Transaction Designed to Deprive Tersly of its Rights to Deferred Consideration, Dechert Created Momondo Group Holdings Limited, An "Associate" of Oliver Burge Under the 2002 SPA**

40.     In preparation for the sale of a portion of the Company to Great Hill, Dechert and others incorporated MGHL (Momondo Group Holdings Limited, as defined above) on October 10, 2014.

41.     MGHL's entire share capital was comprised of a single ordinary share held by Hugo Burge. Because Oliver Burge's son, Hugo, controlled more than 50% of the voting shares in MGHL (indeed, controlled the only voting share), MGHL was considered an "Associate of Mr Oliver Burge" for purposes of the 2002 SPA. *See Id.* at § 5.1.

42.     Upon information and belief, Highlander took these actions in an effort to claim that the rights Tersly held in a portion of Highlander's shares in the Company under the 2002 SPA were either extinguished or the obligation to pay Deferred Consideration was not triggered by the subsequent transfer of Preferred Shares to Great Hill.

**In the Second Relevant 2014 Transaction, Dechert Aided Highlander's Breach of the 2002 SPA When It Transferred Shares in the Company to MGHL Without Providing Notice to or Obtaining Consent from Tersly**

43.     On October 17, 2014, in a Share Exchange Agreement with the shareholders of the Company drafted by Dechert, MGHL agreed "to acquire the entire issued share capital of [the Company] from the Shareholders in exchange for the issue of New Ordinary Shares and New Preferred Shares . . . in Newco [MGHL] such that the Company will become a wholly-owned subsidiary of [MGHL] whose shareholding structure shall mirror the current shareholding structure of [the Company]." *See* 17 October 2014 Share Exchange Agreement, attached hereto as Exhibit 8 ("**Share Exchange Agreement**"), Preamble (D). MGHL was specifically defined in the Share Exchange Agreement as "Newco," and its only stated purpose was to create a parent company with an identical shareholding structure. *Id.*

44.     Under the terms of the Share Exchange Agreement, Highlander agreed to transfer to MGHL all of its shares in the Company "with full title guarantee free from all Encumbrances." *Id.* at § 2.1. "Encumbrance" was defined to "mean[] any interest or equity of any person (including any right to acquire, option or right of pre-emption) or any mortgage, charge, pledge, lien,

assignment, hypothecation, security, interest, title, retention or any other security, agreement or arrangement." *Id.* at§ 1.1.

45.      Neither Highlander nor Dechert provided Tersly with notice of a proposed transfer of shares to an Associate of Oliver Burge on or before October 17, 2014 even though the 2002 SPA specifically provided that, "[s]ave with the prior written consent of [Tersly], such consent not to be unreasonably withheld, [Highlander] will not transfer shares to . . . an Associate of Mr. Oliver Burge."  Exhibit 7 § 5.1.

46.      Tersly did not learn of the proposed transfer of shares from the Company to MGHL on or before October 17, 2014 and did not provide, nor would it have provided, prior written consent for such a transaction that was against its self-interest.

47.      As a direct consequence of Highlander's violation of its obligations under the 2002 SPA, violations directly assisted by Dechert, Tersly did not have the opportunity to ensure that its rights to Deferred Consideration after a future sale of the Company were preserved.  Tersly was not permitted and did not have the opportunity to object to the transaction, nor was it able to – if necessary – seek an injunction to prevent the transaction from being executed.

48.      Neither Highlander nor Dechert notified Tersly of the Share Exchange Agreement after its execution.

**Highlander's and Dechert's Actions Deprive Tersly of its Right to Deferred Consideration After the Sale of Preferred Shares in the Company to Great Hill**

49.      Finally, also on October 17, 2014, Great Hill purchased all Preferred Shares of MGHL by means of its investment vehicle, MM Investment Holdings LP ("**MMIH**"), which signed a Share Purchase Agreement with the Company's shareholders.  *See* 17 October 2014 Agreement for the Partial Sale and Purchase of Momondo Group Holdings Limited, attached hereto as Exhibit 9 ("**2014 SPA**").

50.     MMIH paid a price of £1 per Preferred Share, and thus acquired 60.2% of MGHL. Highlander retained 42,108,041 Ordinary Shares, or 31.69% of the Company.  Hugo Burge retained or obtained through these transactions a total of 7,870,356 Ordinary Shares, or 5.92% of the Company.  Following the 2014 transactions, the three parties, Great Hill, Highlander, and Hugo Burge in his personal capacity, owned a total of 97.81% of MGHL.

51.     The 2014 SPA specifically included the above transactions reorganizing the shares in the Company, including the Share Exchange Agreement transferring those shares to MGHL.  *Id*. at § 4.1.

52.     The sale of shares to MMIH occurred immediately following this reorganization.

53.     Neither Dechert nor Highlander notified Tersly of the sale pursuant to clause 6.1 of the 2002 SPA.

54.     The Great Hill press release confirmed that the transaction valued the Company at more than £132 million, then over $212 million.  *See* Great Hill Press Release on 2014 Transaction, dated October 17, 2014, attached hereto as Exhibit 10.

55.     The 2002 SPA states that "Deferred Consideration" is to be paid to Tersly "within 10 Business Days" of Highlander's receipt of consideration.  *See* Exhibit 7 § 4.4.

56.     Highlander did not make any payment to Tersly by October 31, 2014, the timeframe applicable for payment of Deferred Consideration given the transaction date.  Thus, Highlander, with the assistance of Dechert, breached the 2002 SPA.

57.     As a result of this breach, Tersly lost several rights protected in the 2002 SPA, including the ability to request an arbitrator to value Deferred Consideration or a lawsuit to enforce its rights.

**Tersly Discovers Great Hill's Partial Purchase of the Company and Requests Information, Placing Highlander and Dechert on Notice of a Violation of the 2002 SPA**

58.     As noted above, clause 5.1 of the 2002 SPA states plainly, that "[s]ave with the prior written consent of [Tersly] . . . [Highlander] will not transfer shares to . . . an Associate of Mr. Oliver Burge." Exhibit 7 § 5.1

59.     Because Highlander, with the assistance of Dechert, had breached its contractual requirements to notify Tersly, Tersly first became aware of the sale of shares to Great Hill from subsequent Press Reports in or around November 2014.

60.     On February 17, 2015, four months after the transactions had occurred and having heard nothing from Highlander, Dechert, or any other party engaged in the transaction, Tersly's solicitor wrote to Highlander asking for information on the 2014 transaction pursuant to clause 6.1 of the 2002 SPA. *See* Holding-Parsons' letter to Highlander, dated February 17, 2015, attached hereto as Exhibit 11.

61.     Dechert, acting as Highlander's solicitors through its partner Graham Defries ("**Defries**"), first responded on March 6, 2015. However, Dechert did not respond substantively to Tersly's inquiry.

62.     Finally, in its second response on April 9, 2015, Dechert represented that, "the share exchange did not constitute a Disposal as defined in the Agreement as it amounted to a transfer to an Associate of Mr. Oliver Burge, which is excluded from the definition of Disposal under the Agreement." April 9, 2015 Letter from Dechert to Holding Parsons Solicitors, attached hereto as Exhibit 12. In this open correspondence, Dechert therefore accepted that Highlander transferred shares governed by the 2002 SPA to an Associate without providing Tersly with notice or the opportunity for prior written consent, an admission that Highlander, with the assistance of Dechert, breached the 2002 SPA.

63.     Finally, on May 15, 2015, Dechert sent Tersly a CD containing the transactional documents relevant to the 2014 transactions. *See* May 15, 2015 Letter from Dechert to Holding-Parsons Solicitors, attached hereto as Exhibit 13. Dechert and Highlander provided these documents only after Tersly's solicitors demanded information under the 2002 SPA and waited for 196 total days, a delay of over six months, after it should have been provided under the terms of that agreement.

64.     In the cover letter enclosing this CD, Dechert noted that the production of documents was "required by clause 6 of the" 2002 SPA, and that the CD contained the "relevant documentation evidencing the changes to the legal title and beneficial ownership of the Company's shares and the Reconstruction." Dechert thus again recognized that Highlander, with its assistance, had breached clause 6 of the 2002 SPA by failing to provide these documents within 10 Business Days as required by clauses 6.1.1 and 6.1.2 of the 2002 SPA. *See* Exhibit 7.

65.     Importantly, the letter also acknowledged that there had been a disposal of MGHL shares and that the parties would need to determine the Deferred Consideration amounts. However, Dechert's letter lulled Tersly into settling for a "heavy discount" by representing that it was unlikely that Highlander would exit from its remaining shareholding in the Company before 2023, when the deferred consideration expired. Exhibit 13.

66.     In relevant part, the letter from Dechert stated:

> As previously indicated, our client is very willing to provide all information which is required in accordance with clause 6 of the Agreement *to assess the quantum of your client's claim for deferred consideration under the Agreement*. . . .
> *As required by clause 6 of the Agreement*, we therefore enclose a CD which contains the relevant documentation evidencing the changes to the legal title and beneficial ownership of the Company's shares and the Reconstruction. The CD also contains documentation *evidencing the disposal of Highlander's Preferred Shares* in the new holding company, Momondo Group Holdings Limited ("MMGH"), to the buyer (the "Transaction").

. . . Our client has calculated that *if the consideration per share were adjusted to reflect (i) the changes to the share capital which resulted from the Reorganisation*, (ii) a pro rata share of transaction costs, and (iii) a deduction for the amount paid into escrow, *that the equivalent price per A Ordinary share would be £8.02*. You are now in possession of the documents necessary to make your own calculation.

As previously indicated Highlander sold approximately 44% of its shares in Momondo Group Holdings Limited and retained the balance of its holding. Although under the Agreement Deferred Consideration is only due in connection with a Disposal of shares, our client is willing to consider reaching a settlement in respect of the balance of the shares held by Highlander in MMGH as well as the portion of consideration currently held in escrow. However, *please be aware that a heavy discount would necessarily be applied to the balance of shares held to reflect i) the uncertainty as to whether any exit is likely to be achieved within the timeframe contemplated by the Agreement*, and ii) the liquidation preference attached to the preferred shares held in Momondo Group Holdings Limited, pursuant to which the remaining ordinary shares held by our client rank below the preferred shares sold by our client on a future exit. If your client is interested in this proposal, please let us know.

Exhibit 13, (emphasis added).

67.     Whether there was "uncertainty as to whether any exit is likely to be achieved" prior to 2023, when the Deferred Consideration provision of the 2002 SPA would expire, is a statement of fact that was solely within the knowledge of Dechert, Highlander, the purchaser, Great Hill, and its representatives.

68.     At this point, Tersly was aware that Great Hill had purchased all of the Preferred Shares of the Company and thus held a controlling share. Tersly was also aware that Great Hill's standard and usual practice was to hold such assets for three to seven years, as outlined on Great Hill's own website.

69.     However, as Dechert's statement directly contradicted Great Hill's standard and usual practice with regard to holding assets, Tersly reevaluated its expectation that the Company would be sold prior to termination of the 2002 SPA.

70.     Thus, Tersly relied on and was entitled to rely on Dechert's continuing representations with regard to the uncertainty that an exit would be achieved by 2023 in all of its future negotiations with Highlander regarding settlement.

71.     Indeed, Dechert's representations regarding the uncertainty of any sale of Highlander's remaining shares in MGHL and the "heavy discount" that would need to be applied showed Dechert's specific knowledge and understanding of Tersly's claim.

72.     Dechert's statement led Tersly to seek payment of Deferred Consideration for all of the shares covered by the 2002 SPA based on the price received by Highlander for the Preferred Shares under the 2014 SPA rather than simply for the portion of those shares sold to Great Hill.

**Dechert Continues Efforts to Deprive Tersly of its Rights with Further Correspondence**

73.     Tersly's solicitors wrote repeatedly to Dechert seeking clarity—in accordance with the Pre-Action Protocol under English litigation practice—regarding Highlander's position on the facts of the case.  Tersly wrote on June 18, 2015, on September 1, 2015, and on October 12, 2015 requesting a response from Dechert as to whether Highlander violated sections 5 and 6 of the 2002 SPA, as well as seeking to quantify the monetary amount of Deferred Consideration.

74.     In particular, the October 12, 2015 letter from Tersly's solicitors explained the rationale of the 2002 SPA in detail.  *See* October 12, 2015 Letter from Holding-Parsons Solicitors to Dechert, attached hereto as Exhibit 14.  Tersly's solicitor, given his understanding of the 2014 partial sale of the Company to Great Hill, calculated the amount of Deferred Consideration owed by Highlander as £4,134,592.  After addressing escrow issues, Tersly offered to settle for the amount it believed it was owed in Deferred Consideration at this time, totaling £3,671,360.

75.     Dechert responded with a short email on November 2, 2015 asserting that there had not "technically" been a Disposal but failed to otherwise respond.

76.     Tersly wrote to Dechert again on November 18, 2015, on January 13, 2016, on February 8, 2016, and on March 15, 2016 requesting responses from Dechert regarding Highlander's position.

77.     It was not until April 14, 2016, after eight separate letters and several additional emails from Tersly, that Dechert finally responded to the allegations.  Dechert asserted that "No Disposal has taken place" as MGHL "was a company wholly owned by Mr. Hugo Burge, the son of Mr. Oliver Burge" and was "therefore an Associate of Mr. Oliver Burge and a member of the Buyer's Group."  April 14, 2016 Letter from Dechert to Holding-Parsons Solicitors, attached hereto as Exhibit 15.

78.     Dechert thus admitted, again, that there had been a breach of clause 5.1 of the 2002 SPA because neither Highlander nor its agent Dechert obtained prior written consent from Tersly before transferring shares to an Associate of Oliver Burge.

79.     When Tersly then specifically asked Dechert to address the issue of 2002 SPA clause 5.1, Dechert asserted on May 13, 2016 that:

> Even if your client's consent was required for a transfer of the Shares by our client (which is not admitted) that consent was not to be unreasonably withheld.  We do not agree that your client could have reasonably been entitled to require '***that its rights to Deferred Consideration were preserved***' before consenting to the transfer.

May 13, 2016 Letter from Dechert to Holding-Parsons Solicitors, attached hereto as Exhibit 16 (emphasis added).

80.     Then, on June 20, 2016 Dechert ended discussions with Tersly, claiming that it had provided all of its answers and would no longer "engage further with the points you make."

**Highlander and Dechert Conclude that Highlander's Dispute with Tersly Will Scuttle a
Lucrative Future Sale of the Company and, to Ensure that the Sale Occurs, Take Actions to
Harm Tersly's Interests**

81.    Unbeknownst to Tersly, while Tersly was restating its claims to Highlander and Dechert
regarding the 2002 SPA, Great Hill, Dechert, and Hugo Burge, CEO of Momondo and Momondo's
US subsidiary Cheapflights Media (USA) Inc., were simultaneously negotiating a sale of 100% of
the shares in the Company to BHI, then Priceline, a company capitalized at over $70 billion.

82.    As explained more fully below, by at least September 2016, Dechert knew that BHI had
interest in acquiring the Company.  At that point in time, as described above, Tersly had been
engaged in discussions with Highlander, through its legal agent Dechert, for over a year and a half
regarding Tersly's claims that Highlander had breached the 2002 SPA.

83.    On September 15, 2016, the Company executed a Non-Disclosure Agreement with Kayak
(a fully owned subsidiary of BHI) regarding a potential sale of the Company to BHI.

84.    BHI then issued a Letter of Intent to buy 100% of the shares of the Company on or about
October 2016.  This Letter of Intent set forth a 60-day period to conduct due diligence.

85.    Highlander, Dechert, and Great Hill were aware of the impending sale to BHI.  Upon
information and belief, each of these parties were provided with draft sale documents.

86.    Great Hill acted as the "Sellers' Representative" throughout the negotiations.

87.    As the Seller's Representative and majority shareholder of MGHL, Great Hill was
responsible for providing BHI with responses to its due diligence inquiries.

88.    Through this role, Great Hill was a primary party responsible for determining if the due
diligence period needed to be extended and had great influence on completion of the elements
required for final agreement with BHI to be executed.

89.    Hugo Burge, who is an individual MGHL shareholder, a beneficiary of the trust that owns
Highlander, and also was the Company's CEO at the time in question, had great influence on

negotiations between the Company and BHI.  Based on information and belief, Hugo Burge controlled the sale negotiations.

90.     By Hugo Burge's own sworn admission in prior legal proceedings, he participated in due diligence on behalf of the Company.  Based on information and belief, along with his role as the CEO of the Company, Hugo Burge acted as the intermediary between Highlander and Great Hill during the negotiation and sale of the Company to BHI.

91.     During preliminary negotiations with BHI, Dechert and Hugo Burge, as CEO of the Company, knew that if Tersly became aware of the prospective sale of all of Highlander's shares in the Company to BHI, consisting of 42,108,041 Ordinary Shares that totaled 31.69% of the company, Tersly would demand significantly more Deferred Consideration than had been discussed in the October 12, 2015 Letter from Holding-Parsons Solicitors to Dechert.  *See* Exhibit 14.

92.     Dechert and Hugo Burge, as CEO of the Company, also knew that, because BHI is a publicly traded company on the New York Stock Exchange, under the rules of the United States Securities and Exchange Commission any definitive agreement for BHI to purchase shares in the Company would need to be publicly disclosed.  Through this public disclosure, Tersly would independently learn of the increased value of the shares in which it retained an economic interest.

**Not Content to Simply Obstruct Tersly's Rights to Compensation Arising Out of the 2014 Partial Sale of the Company, Highlander and Dechert Again Knowingly Violate the 2002 SPA to Further Impair Tersly's Rights**

93.     As Highlander and Dechert negotiated the sale of the Company to BHI near the end of 2016, they knowingly continued to violate the 2002 SPA with Tersly despite having been recently reminded in inter-attorney correspondence of its previous breaches.

94.     For example, on November 16, 2016 MGHL made a share capitalization, increasing the total share capital in MGHL from 132,890,366 shares to 152,063,017 shares.  This was a

capitalization and therefore, under the terms of the 2002 SPA, would be classified as a Reconstruction when:

  a. MGHL was created specifically to avoid Highlander's pre-existing contractual rights relating to Reconstructions;

  b. Highlander breached clause 5.1 of the 2002 SPA by transferring the Tersly Shares to MGHL without seeking Tersly's consent; and

  c. Highlander breached clause 6.1.1 of the 2002 SPA by transferring legal title of the Tersly Shares without disclosing it to Tersly.

95. Despite the recent correspondence between Tersly and Dechert regarding 2002 SPA clause 6.1.1, Dechert failed to provide Tersly with notice of this Reconstruction.  Dechert itself had quoted clause 6.1 in its letter of April 14, 2016 to Tersly's solicitors, and thus the failure to comply with clause 6.1.1 was deliberate.  *See* Exhibit 15.

96. Upon information and belief, the deliberate failure of Highlander to comply with the terms of the 2002 SPA with regard to this Reconstruction, aided by the assistance of Dechert, shows that Highlander and Dechert sought to conceal any potential notification to Tersly of the forthcoming Disposal.

97. If Tersly had been notified of the November 16, 2016 Reconstruction, it would have been on notice that a Disposal was more likely than not in the immediate future.  Such notification was material to Tersly's deliberations regarding whether to pursue legal action against Highlander and Dechert on the 2014 transactions.

**Tersly Threatens Legal Action for Failure of Highlander to Pay Deferred Consideration**

98. Finally, on December 15, 2016 at 12:32 pm GMT, after failing to reach agreement with Highlander as to payment of Deferred Consideration arising out of the 2014 transaction, Tersly sent Highlander a demand letter without prejudice.

99.     The demand letter threatened legal action within 28 days unless the full amount due Tersly were paid.  Tersly attached a 15-page Draft Particulars of Claim to the letter that, like a draft complaint in the United States, set forth Tersly's legal claims if suit were filed.

100.    Tersly demanded £4,134,592 as Deferred Consideration based on the implied valuation established by the 2014 sale of a portion of the Company's shares.  However, Tersly's demand was made with **no** awareness of the impending sale of 100% of the shares of the Company to BHI.

101.    Highlander passed Tersly's December 15, 2016 letter and Draft Particulars of Claim on to Dechert.

102.    Highlander was at this time the largest shareholder in the Company other than Great Hill. Hugo Burge, one of the primary negotiators with BHI, was the CEO of the Company and had additional interests in Highlander.

103.    Of particular importance and as detailed more fully below, because Tersly's claim impacted Highlander's rights in the Company and because due diligence with BHI was still ongoing, Highlander would have had to disclose Tersly's claims to Great Hill if it had not already done so.

104.    Finally, due to the same considerations, Highlander would also have had to disclose Tersly's claims to BHI.

**Tersly's Claim Against Highlander Had to be Disclosed to BHI, Impacting Co-Conspirator's Interests in the Lucrative Sale of the Company**

105.    Unknown to Tersly, Highlander received Tersly's demand letter and Draft Particulars of Claim at or around the end of the Company's 60-day due diligence period with BHI.

106.    Tersly's claim impacted Highlander's ownership interest in the shares Tersly sold to Highlander via the 2002 SPA.

107.    Hugo Burge, through his interest in Highlander, knew of Tersly's claim.  As Hugo Burge was CEO of the Company and one of the primary negotiators with BHI, the Company knew of Tersly's claim.

108.    Dechert knew of Tersly's claim regarding the 2002 SPA through its involvement with negotiations on behalf of Highlander since at least March 6, 2015 and learned of Tersly's intention to proceed to litigation on or about December 15, 2016.

109.    Great Hill was the primary shareholder of the Company and was involved in negotiations with BHI.

110.    Consistent with general due diligence practice and as evidenced by the guarantees and warranties in Great Hill's acquisition of shares of the Company in 2014, Highlander, as the second largest shareholder in the Company during the due diligence period with BHI, had to disclose the change in circumstances regarding its ownership interest at least on or about the time Tersly sent its demand letter on December 15, 2016.

111.    This change in circumstances meant that Highlander could not provide the necessary guarantees and warranties so as to transfer its shares to BHI without encumbrances or contingent liabilities.  Additionally, Highlander was required to notify the Company about active claims and pending litigation that impacted its ownership rights in the Company's shares.

112.    As Tersly's claim impacted Highlander's rights in the Company, Highlander would have had to disclose Tersly's claims to all parties involved in the sale of the Company, including Great Hill.

113.    Finally, the Co-Conspirators also had an obligation to update BHI if any of this information changed.

114.     Great Hill therefore knew or should have known of Tersly's claim by at least on or about December 15, 2016.

115.     Upon information and belief, Great Hill and Highlander also faced significant financial penalties arising out of negotiations with BHI, penalties related to significant delays in closing or to misrepresentations about the Company's capitalization.

116.     Defendants knew or should have known that any disclosure of Tersly's claim against Highlander to BHI at this late juncture could jeopardize the sale of the Company to BHI, placing the lucrative return for the sale of Defendants' shares in the Company at risk.

117.     As a result, while knowing full well of the existence of Tersly's rights, Great Hill and Dechert worked in concert with Highlander to avoid disclosing Tersly's claim to BHI.

**Defendants Impair Tersly's Right to Consideration in Order to Increase the Value of Their Interest in the Sale of the Company to BHI**

118.     As noted above, Defendants were aware that if Tersly learned of BHI's interest in the Company, Tersly's efforts to enforce its economic rights would impact consummation of the entire deal, placing the Co-Conspirators' lucrative economic interests in the Company at risk.

119.     Thus, even though Defendants had no specific economic interest in the 2002 SPA between Tersly and Highlander, Defendants' interests in the sale of the Company to BHI and their desire to avoid jeopardizing the deal aligned with Highlander's desire to avoid paying Tersly Deferred Consideration.

120.     In order to perpetuate the scheme, upon information and belief, Great Hill and Dechert actively worked together and with Highlander to conceal BHI's interest in the Company from Tersly.   Defendants worked together to ensure that the public disclosure of information regarding the sale would not take place until Tersly had released its claims.

121.    Because the due diligence period with BHI was extended, BHI did not reach the level of certainty to trigger public disclosure under Federal securities regulations.

122.    The Co-conspirators did not notify Tersly of BHI's interest in acquiring the Company.

123.    As Tersly did not, and could not, have learned about BHI's interest in the Company due to Defendants' scheme, Defendants' active concealment fraudulently diminished Tersly's understanding of the fair market value of its rights by more than 75%.

**Defendants Conspire to Delay Completion of Due Diligence with BHI in Order to Avoid Disclosure to Tersly**

124.    As a result, upon information and belief, Great Hill and Dechert conspired in bad faith to extend the due diligence period and delay the formal signing of the sale agreement with BHI until Highlander had reached a settlement agreement with Tersly releasing all claims under the 2002 SPA.

125.    Upon information and belief, the 60-day due diligence period for BHI was first extended in December 2016 and then extended again in January 2017.

126.    On December 20, 2016 at 6:44 pm GMT, Dechert sent a letter to Tersly on behalf of Highlander offering to pay the full amount demanded in Tersly's December 15, 2016 correspondence.  This response was just three and one half working days after HPS sent Tersly's Draft Particulars of Claim.

127.    Until this response from Dechert, Highlander and Dechert's position in negotiations with Tersly had been that Tersly had no claim arising out of the 2002 SPA.  However, with this response, Highlander and Dechert admitted that Tersly had a valid claim arising out of the 2014 sale of share in the Company to Great Hill.   The only question remaining after Dechert's December 20, 2016 response was how much Tersly's claim was worth.

128.    Tersly did not immediately agree to Highlander's proposed settlement amount. Negotiations relating to equitable issues, costs, and interest remained, and these negotiations delayed final approval of the settlement agreement for more than a month.

129.    During this period from on or about December 20, 2016 forward, therefore, Highlander and Dechert had admitted wrongdoing arising out of the 2014 transaction with Great Hill.

130.    The Co-conspirators extended the due diligence period with BHI two times from December 2016 to January 2017.  Upon information and belief, these extensions were in order to avoid disclosing Highlander's issue with Tersly to BHI.

131.    Following negotiations over costs and interests, on January 24, 2017, more than a month after admitting to Highlander's violation of the 2002 SPA, Dechert offered a total settlement payment of £4,334,592 (or roughly $5,683,083 as per the exchange rate on January 7, 2020).  This sum included both a calculation of the amount owed Tersly for Deferred Consideration arising out of the 2014 sale to Great Hill and payment of legal fees and interest.

132.    Dechert and Highlander were aware that this amount was far below the correct valuation of Deferred Consideration under the 2002 SPA because Dechert and Highlander, with the assistance of Great Hill, purposely withheld information about the pending sale of the Company to BHI.

133.    Due to Highlander's and Dechert's material misrepresentations about the Company's prospects and to Great Hill's assistance in delaying the agreement with BHI, Tersly was unable to discover the actual fair market value of its Deferred Compensation at the time.  Thus, Tersly accepted this settlement offer on January 31, 2017.

**Tersly Enters into Undervalued Settlement Agreement with Highlander Due to Dechert's and Great Hill's Intentional Conduct**

134.    Tersly and Highlander then executed a Deed of Settlement that Dechert had drafted. *See* Deed of Settlement, attached hereto as Exhibit 17 ("**Deed of Settlement** ").

135.    In fact, if Highlander, through its agent Dechert, had acted in good faith and disclosed to Tersly the value BHI was prepared to pay for MGHL at the time, Tersly would have been entitled to approximately, but not less than, $20 million based on the 2017 valuation of the Company in its sale to BHI rather than the 2014 valuation arising out of the partial sale of the Company to Great Hill.

136.    Highlander and Dechert were only able to avoid disclosure due to Great Hill's assistance in delaying the agreement with BHI.

137.    The Deed of Settlement, as drafted by Dechert, did not simply address the claims that Tersly had raised in the Draft Particulars of Claim  It instead provided for a general release for Highlander from all claims relating to the 2002 SPA:

> "….and Tersly hereby releases and forever discharges Highlander and its Related Parties from, any and all actions, claims, rights demands and set-offs, whether in this jurisdiction or any other, whether known or unknown and whether in law or in equity, that Tersly, its Related Parties or any of them ever had, may have or hereafter can, shall or may have against Highlander or any of its Related Parties arising out of or connected with the SPA or the sale of the Tersly Shares, including, but not limited to, any claims Tersly may have for Deferred Consideration under clause 4 of the SPA including any claims alleged in the Draft Particulars of Claim (the "Released Claims")."

Exhibit 17, § 4.1.

138.    Because the Deed of Settlement had a general release and a choice of law provision directing the terms to be governed by English law, Highlander, through its agent Dechert, had a

duty to Tersly to disclose potential claims and rights that (i) it knew Tersly possessed, and (ii) of which it knew Tersly was unaware.

139.    At the time of execution of the Deed of Settlement, Highlander and its agent Dechert were aware that Tersly did not know of the forthcoming sale of the Company to BHI, and thus knew that Tersly was undervaluing its Deferred Consideration under the 2002 SPA.  Yet Highlander, through its agent Dechert, failed to disclose the forthcoming sale of the Company to BHI, ensuring that Tersly could not learn of these potential claims and rights.

140.    But for Dechert and Highlander's intentional efforts to deliberately mislead Tersly and, with Great Hill's assistance, keep it in the dark about the sale of shares to BHI, Tersly would never have signed the Deed of Settlement.

141.    The Deed of Settlement's release was to take effect as soon as Tersly had received the settlement payment, a payment that was paid on February 7, 2017.

**The Company Announces its Agreement to Sell 100% of its Shares to BHI (at the relevant time, "Priceline") on February 7, 2017, A Mere Nine Hours After Highlander Made the Settlement Payment to Tersly**

142.    The timeline for the final days of negotiation of Highlander's settlement with Tersly, through Highlander's agent Dechert, and the public release of information about BHI's notice of intent to purchase the Company, as influenced by Great Hill, occurred as follows:

a.    **January 31, 2017**:  After negotiating regarding interest and legal fees, Tersly and Highlander, through Highlander's agent Dechert, agree on a settlement amount.

b.    **February 2, 2017**:  Dechert writes that Highlander has executed the Deed of Settlement.

c. **February 2017**: Upon information and belief, BHI is informed that the sale may now proceed, and preparations are made for the sale documents to be signed shortly following the final Deed of Settlement with Tersly.

d. **February 5, 2017**:  Upon information and belief, BHI drafts the announcement document for the SEC.

e. **February 6, 2017**:  Tersly executes the Deed of Settlement.

f. **February 7, 2017**: Dechert, as agent of Highlander, wires funds to Tersly's solicitors' account at 12:01 p.m. GMT, or 7:01 a.m. EST, establishing February 7, 2017 as the Settlement Date for purposes of the Deed of Settlement.

g. **February 7, 2017**: BHI signs a "Definitive Agreement" to purchase the Company for $550 million in cash.

h. **February 7, 2017**: BHI issues a press release at 4:18 p.m. EST announcing its purchase of the Company and submits an 8-K to the United States Securities and Exchange Commission at 4:30 p.m. EST.  As Eastern Standard Time is 5 hours after Greenwich Mean Time, the press release issued 9 hours and 17 minutes after the Settlement Date for the Deed of Settlement between Highlander and Tersly.  *See* BHI Press Release, attached hereto as Exhibit 18 ("**BHI Press Release**").

143.    The timing of the actions of the Co-conspirators shows that it is beyond mere coincidence that BHI made its public announcement on the afternoon of February 7, 2017.

144.    Highlander, with the assistance of Dechert, negotiated and executed the 2017 Deed of Settlement in bad faith with the intent to deceive Tersly into settling based upon an outdated valuation of the Company.

145.     The knowledge that the Company valuation used for the Deed of Settlement was outdated was solely in the possession of Highlander, Great Hill, Dechert, and other parties involved in the negotiation and execution of the acquisition by BHI.  Of note, Tersly was not a party to these negotiations.

146.     Tersly was not provided with any notification by Highlander or Dechert that on February 6, 2017 it was releasing claims for Deferred Consideration that Highlander was aware would accrue based on the sale of MGHL shares to BHI.

**Great Hill and Dechert Complete the Sale of The Company to BHI ( formerly Priceline)**

147.     Through press releases, Tersly learned that BHI's purchase of the Company was completed on July 24, 2017.

148.     While Tersly does not have the contracting documents for the sale of the Company to BHI, Tersly has done a rough calculation of the Deferred Consideration it would have been due under BHI's publicly reported price of $550 million for 100% of MGHL's shares.

149.     As Great Hill, Highlander, and Hugo Burge in his personal capacity together controlled 97.81% of all shares of the Company, they had the greatest influence on any decisions made during negotiations.  Additionally, as noted above, Great Hill, as the Sellers' Representative, Hugo Burge, as CEO of the Company, and Dechert, as counsel to MGHL and shareholders other than Great Hill, controlled negotiations between the Company and BHI.

150.     Highlander's shares would have been sold to BHI under the Drag-Along Rights of MGHL's Articles of Association, which required that Highlander receive equal consideration for each of its Ordinary Shares as the consideration Great Hill received for selling each of its Preferred Shares.  *See* MGHL's Articles of Association, attached hereto as Exhibit 19 ("**MGHL's Articles of Association**"), cl. 55.5.

151.    The $550 million price for all of the shares of MGHL leads to an implied 2002 Share Price of $48.95 per 2002 Share.  This leads to a total valuation of the Shares, defined as those shares Highlander held immediately after execution of the 2002 SPA as adjusted by any reclassification, capitalization, consolidation or subdivision since that time, from the sale to BHI of $171,814,500. *See* Exhibit 7 § 1.1.

152.    Pursuant to clause 4.2 of the 2002 SPA, Tersly was due 14% of the value of the Shares, minus £1 per Share as long as the value of each Share totaled above £2.  *See* Exhibit 7 § 4.2.  Using this formula, Tersly was due to be paid $23,423,246 from the sale of the Company to BHI.

153.    Highlander sold all of its 42,108,041 Ordinary Shares, and Great Hill sold 100% of the Preferred Shares of MGHL, acquired in 2014, to BHI.

154.    Dechert and Great Hill received large sums of money from the sale of MGHL to BHI. Great Hill's shares were valued at $289,600,000.00.  Highlander's shares sold to BHI were valued at $152,301,480.05.   In addition, Highlander also received consideration when Great Hill purchased shares in 2014.  In total, Highlander received $198,830,039.42 from the sale of shares of the Company.

155.    However, due to the actions taken by each of the Co-conspirators, Tersly was deprived of its rights to the full value of its Deferred Consideration.  Great Hill and Dechert, therefore, are thus jointly and severally liable to Tersly for this deprivation.

156.    Tersly reserves the right to adjust these figures on receipt of the 2017 sale documentation as well as other documentation and information.

## COUNT ONE

### Interference with Advantageous Business Relations

157.    Plaintiff hereby repeats and incorporates by reference the allegations contained in Paragraphs 1 through 156 above.

158.    Tersly entered in to the 2002 SPA with Highlander, agreeing to sell its shares in the Company.

159.    Along with an initial payment upon execution of the agreement, the 2002 SPA provided that Tersly would receive approximately 14% of Highlander's proceeds in any future sale of its shares in the Company prior to 2023.

160.    Dechert, as counsel to the Company and its shareholders, including Highlander, was aware of Tersly's rights under the 2002 SPA.

161.    Great Hill learned of Tersly's rights under the 2002 SPA prior to execution of the 2017 settlement agreement between Tersly and Highlander, at some point during or before negotiations arising out of Tersly's letter to Highlander with the draft particulars of claim in December 2016.

162.    Great Hill and Dechert were in possession of information that was material to Tersly, specifically that BHI had issued a letter of intent in October 2016 to purchase 100% of the stock of the Company.

163.    Tersly could not learn of BHI's letter of intent without disclosure by Highlander under the terms of the 2002 SPA or mandatory disclosure by BHI due to securities regulations.

164.    Great Hill and Dechert did not want to have to provide BHI information on Tersly's claim for breach of the 2002 SPA, as sent in Tersly's December 2016 draft particulars of claim, because BHI's knowledge of Tersly's claim could threaten completion of the deal.

165.    Great Hill and Dechert assisted Highlander in failing to disclose and in intentionally withholding information regarding BHI's interest in acquiring the Company from Tersly.

166.    Great Hill and Dechert did not want Tersly to learn of BHI's interest in acquiring the Company by means of BHI's required public announcement under SEC regulations.

167.    Great Hill and Dechert sought to postpone BHI's required public announcement of its intent to purchase 100% of the stock of the Company until after Tersly had signed a settlement agreement, the execution of which occurred on February 6, 2017.

168.    Great Hill and Dechert did succeed in postponing the announcement of BHI's intent to purchase 100% of the Company's stock until nine hours after payment of the settlement to Tersly.

169.    As a result of the actions of Great Hill and Dechert, Tersly was induced in to agreeing to a settlement that undervalued its rights under the 2002 SPA by approximately 75%, or roughly $18 million.

170.    Tersly was thus damaged by the actions of Great Hill and Dechert.

## COUNT TWO

### Interference with Contractual Relations

171.    Plaintiff hereby repeats and incorporates by reference the allegations contained in Paragraphs 1 through 170 above.

172.    Tersly entered in to the 2002 SPA with Highlander, agreeing to sell its shares in the Company.

173.    Along with an initial payment upon execution of the agreement, the 2002 SPA provided that Tersly would receive approximately 14% of Highlander's proceeds in any future sale of the Company prior to 2023.

174.    Dechert, as counsel to the Company and its shareholders, including Highlander, was aware of Tersly's rights under the 2002 SPA.

175.    Great Hill learned of Tersly's rights under the 2002 SPA prior to execution of the 2017 settlement agreement between Tersly and Highlander, at some point during or before negotiations arising out of Tersly's letter to Highlander with the Draft Particulars of Claim in December 2016.

176.    Great Hill and Dechert were in possession of information that was material to Tersly, specifically that BHI had issued a letter of intent in October 2016 to purchase 100% of the stock of the Company.

177.    Tersly could not learn of BHI's letter of intent without disclosure by Highlander under the terms of the 2002 SPA or mandatory disclosure by BHI due to securities regulations.

178.    Great Hill and Dechert did not want to have to provide BHI information on Tersly's claim for breach of the 2002 SPA, as sent in Tersly's December 2016 draft particulars of claim, because BHI's knowledge of Tersly's claim could threaten completion of the deal.

179.    Great Hill and Dechert assisted Highlander in failing to disclose and in intentionally withholding information regarding BHI's interest in acquiring the Company from Tersly.

180.    Great Hill and Dechert did not want Tersly to learn of BHI's interest in acquiring the Company by means of BHI's required public announcement under SEC regulations.

181.    Great Hill and Dechert sought to postpone the announcement of BHI's required public announcement of its intent to purchase 100% of the stock of the Company until after Tersly signed a settlement agreement on February 6, 2017.

182.    Great Hill and Dechert did succeed in postponing the announcement of BHI's intent to purchase 100% of the Company's stock until nine hours after payment of the settlement to Tersly.

183.    As a result of the actions of Great Hill and Dechert, Tersly was induced in to agreeing to a settlement that undervalued its rights under the 2002 SPA by approximately 75%, or roughly $18 million.

## COUNT THREE

### Civil Conspiracy

184.    Plaintiff hereby repeats and incorporates by reference the allegations contained in Paragraphs 1 through 183 above.

185.    Highlander entered in to the 2002 SPA, a non-discretionary relational contract, with Tersly in January 2002.

186.    Dechert, as counsel to the Company and its shareholders, including Highlander, was aware of Tersly's rights under the 2002 SPA.

187.    Great Hill learned of Tersly's rights under the 2002 SPA prior to execution of the 2017 settlement agreement between Tersly and Highlander, at some point during or before negotiations arising out of Tersly's letter to Highlander with the draft particulars of claim in December 2016.

188.    Great Hill and Dechert knowingly and willingly entered into an agreement or confederation with each sharing the common identical unlawful purpose to deprive Tersly of its rights under the 2002 SPA.

189.    Great Hill, as "Seller's Representative" in the negotiations with BHI, had control over the timing of certain key events in the deal's progression.

190.    Dechert represented the Company and all of its shareholders other than Great Hill in the negotiation and execution of the deal with BHI.

191.    Great Hill and Dechert were in possession of information that was material to Tersly, specifically that BHI had issued a letter of intent in October 2016 to purchase 100% of the stock of the Company.

192.    Tersly could not learn of BHI's letter of intent unless either Highlander disclosed BHI's interest to Tersly under the 2002 SPA or BHI disclosed its interest in the Company under mandatory disclosure rules pursuant to Federal securities regulations.

193.    Great Hill and Dechert did not want to have to provide BHI information on Tersly's claim for breach of the 2002 SPA, as sent in Tersly's December 2016 draft particulars of claim, because BHI's knowledge of Tersly's claim could threaten completion of the deal.

194.    Great Hill and Dechert assisted Highlander in withholding information on BHI's interest in the Company from Tersly.

195.    Additionally, as Great Hill and Dechert did not want Tersly to learn of BHI's interest in the Company through BHI's required public announcement under SEC regulations, Great Hill and Dechert sought to postpone the announcement of BHI's required public announcement of its intent to purchase 100% of the stock of the Company until after Tersly signed a settlement agreement on February 6, 2017.

196.    Great Hill and Dechert succeeded in postponing the announcement of BHI's intent to purchase 100% of the Company's stock until nine hours after the Settlement Agreement between Tersly and Highlander became binding under its terms.

197.    As a result of the actions of Great Hill and Dechert, Tersly was induced in to agreeing to a settlement that undervalued its rights under the 2002 SPA by approximately 75%, or roughly $18 million.

198.    Tersly was thus damaged by the collective actions of Great Hill and Dechert.

199.    Great Hill and Dechert, as well as non-party Highlander, conspired and succeeded in depriving Tersly of rights as set forth in the 2002 SPA.

## COUNT FOUR

### Fraud

200.    Plaintiff hereby repeats and incorporates by reference the allegations contained in Paragraphs 1 through 199 above.

201.    Dechert made a false representation of material fact when it withheld information from Tersly regarding BHI's stated interest in the Company.

202.    Dechert knew that it withheld material information from Tersly.

203.    Dechert withheld the information on BHI's interest in the Company so that Tersly would believe that its interest in the Company was worth less than it actually was during settlement negotiations.

204.    Dechert knew that Tersly did not have any ability to obtain information on BHI's interest in the Company unless it: (1) disclosed it to Tersly, or (2) BHI issued a letter of intent with sufficient certainty to trigger its obligations under United States securities regulations, thus making its interest publicly known.

205.    Tersly relied on Dechert's representations in order to value its settlement.

206.    Dechert's representations were the *sine qua non* of the fraud.

207.    But for Dechert's representation, Tersly would not have entered into a settlement with Highlander.

208.    Tersly's rights were undervalued in the Deed of Settlement executed on February 6, 2017, by approximately 75%, or roughly $18 million.

## <u>COUNT FIVE</u>

### **Unfair and Deceptive Acts in Violation of M.G.L. c. 93A**

209.    Plaintiff hereby repeats and incorporates by reference the allegations contained in Paragraphs 1 through 208 above.

210.    Great Hill and Dechert engaged in trade or commerce when they negotiated and sold the Company to BHI.

211.    Great Hill and Dechert knew of Tersly's contract with Highlander and engaged in practices to assist Highlander in breaching said agreement.

212.    The wrongful acts of the defendants Great Hill and Dechert constitute a violation of Massachusetts General Laws chapter 93A section 11.

213.    Great Hill's and Dechert's unfair and deceptive acts occurred primarily and substantially in Massachusetts.

214.    Great Hill's and Dechert's unfair and deceptive acts were a substantial factor in directly and proximately causing loss of money and/or property, and irreparable harm, to Tersly.

215.    Great Hill and Dechert acted willfully and knowingly in their unfair and deceptive acts.

### **PRAYERS FOR RELIEF**

WHEREFORE, Plaintiff prays that this Court:

a.    After trial, enter judgment against each and every Defendant, jointly and severally, on Counts I, II, and III, in an amount to be determined after trial and award the Plaintiff damages, interest, costs, and fees in bringing this action;

b.    After trial, enter judgment against Dechert on Count IV, in an amount to be determined after trial and award the Plaintiff damages, interest, costs, and fees in bringing this action;

c. With respect to Count V, find the Defendants' violation of M.G.L. c. 93A to be a willful and knowing violation and award the Plaintiff multiple damages, interest, reasonable attorney fees, and costs in bringing this action; and

d. Grant the Plaintiff such other relief as is just and proper.

**JURY DEMAND**

The Plaintiff claims his right to a trial by jury on all issues and claims so triable.

Respectfully submitted,

Tersly Investments Limited, Plaintiff
By its attorneys:

/s/ Thomas E. Dwyer, Jr.
Thomas E. Dwyer (BBO No. 139660)
Jonathan C. Crafts (BBO No. 677887)
Dwyer LLC
10 Derne Street
Boston, Massachusetts 02114
Tel:    (617) 227-6000
Fax:    (617) 723-6892
tdwyer@dwyer-llc.com
jcrafts@dwyer-llc.com

Dated: February 6, 2020